Raul MEDRANO, Teresa J. Lara, Faustino Garcia, Alejandro Garcia, Olga Leyva Velarde, and Efren Ramos Fraide, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

D'ARRIGO BROTHERS COMPANY OF CALIFORNIA, Defendant.

No. C 00–20826 JF(RS).

United States District Court, N.D. California, San Jose Division.

Sept. 22, 2004.

Paul Strauss, Miner, Barnhill & Galland, Chicago, IL, for plaintiff.

Brian Bertossa, Cook Brown, LLP, Sacramento, CA, Geoffrey F. Gega, Regina Silva, Cook Brown, LLP, Santa Ana, CA, for defendant.

## AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT'S LIABILITY [1]

FOGEL, District Judge.

Plaintiffs move for partial summary judgment as to the liability of Defendant in this class action lawsuit. The Court has read and considered the briefing and evidence submitted by the parties and has considered the oral arguments of counsel. For the reasons set forth below, the motion will be granted.

## I. BACKGROUND

Plaintiffs, current and former employees of Defendant D'Arrigo Brothers Company of California ("D'Arrigo"), are agricultural workers. D'Arrigo is engaged in the business of planting, harvesting, grading, packaging, packing, and processing vegetables. Plaintiffs allege that between 1996 and 2000, D'Arrigo neither recorded nor compensated· them for all hours worked—in particular, hours that D'Arrigo required Plaintiffs to spend waiting and traveling to and from fields pursuant to D'Arrigo's mandatory work transportation policy. Pursuant to this policy, D'Arrigo required Plaintiffs to report to a designated departure point—the Spreckels Parking Lot—and to board buses operated by D'Arrigo. The buses then transported the workers to various work sites. Plaintiffs were not allowed to drive directly to a work site even if it was closer to their home than the Spreckels Parking Lot. At the end of the workday, Plaintiffs were not permitted to leave the work site immediately, but instead had to wait for the foreman to finish his or her administrative tasks before the bus could transport them back to the Spreckels Parking Lot.

Plaintiffs ask for summary adjudication that D'Arrigo failed to pay wages due for mandatory travel and waiting time as required by California Industrial Welfare Commission ("IWC") wage order No. 14–80 ("Wage Order No. 14–80") (found at CAL. CODE REGS., tit. 8, § 11140),[2] California Labor Code sections 201 and 202, and the California Unfair Business Practices Act, California Business and Professions Code sections 17200, *et seq.* They claim that D'Arrigo should have compensated them for this compulsory waiting and travel time, which includes time spent riding the bus to the fields, waiting for the bus at the end of the day, and riding the bus back to the departure point. Plaintiffs contend that the legal effect of D'Arrigo's failure to compensate them for these activities is that they have not been paid wages due to them by law. D'Arrigo disputes

---

1. An unpublished version of this Order originally was issued on March 16, 2004. The present Order incorporates certain modifications and clarifications in light of subsequent briefing submitted by the parties.

2. *See Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 581, 94 Cal.Rptr.2d 3, 995 P.2d 139 (Cal.2000), and *Indus. Welfare Comm'n v. Superior Court,* 27 Cal.3d 690, 166 Cal. Rptr. 331, 613 P.2d 579 (1980), for a description of the IWC and its orders and an interpretation of Wage Order No. 14–80.

Plaintiffs' claims. It argues that it compensated Plaintiffs for travel time via its "piece rate" payment scheme. It asserts that it sometimes paid laborers on the basis of the quantity of vegetables picked rather than the number of hours worked and that when it did so such "piece rate" payments included payment for mandatory travel and waiting time.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. There is a genuine dispute if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* Summary judgment thus is not appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve the material issue in his or her favor. *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991). However, the more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir.1990).

■ The moving party bears the initial burden of informing the Court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its initial burden, the burden shifts to the nonmoving party to present specific facts showing that there is a genuine issue

of material fact for trial. FED. R. CIV. P. 56(e); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). The standard applied to a motion seeking partial summary judgment is identical to the standard applied to a motion seeking summary judgment of the entire case. *Urantia Found. v. Maaherra*, 895 F.Supp. 1335, 1335 (D.Ariz.1995).

## III. ANALYSIS

### A. AWPA, Wage Order No. 14–80, and *Morillion*

Plaintiffs seek unpaid wages and statutory penalties arising from D'Arrigo's alleged failure to pay them for time that D'Arrigo compelled them to spend waiting and traveling to and from work sites on D'Arrigo's vehicles between August 4, 1996 and April 14, 2000. Plaintiffs argue that summary judgment should be granted because there is no genuine issue of material fact that they were not paid for such travel and waiting time.

■ The Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801, *et seq.*, requires an agricultural employer to keep accurate records of time worked and to pay seasonal workers all wages when due. AWPA's requirements are triggered if state law—in particular California's Wage Order No. 14–80 and the California Labor Code—specifies that wages are due. *Medrano v. D'Arrigo Bros. Co. of Cal.*, 125 F.Supp.2d 1163, 1167 (N.D.Cal.2000). 29 U.S.C. § 1832(a) "simply provides that wages must be paid when due, without limiting the source of the obligation," *id.* at 1167, and thus "Plaintiffs have alleged a cognizable AWPA claim by alleging that they were not paid wages due to them under California law," *id.* at 1168.

■ Section 4 of Wage Order No. 14–80 requires an agricultural employer to pay agricultural workers a specified minimum wage for "all hours worked." Section 4(b) provides: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." The California Supreme Court held in *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 587, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000), that all time that agricultural workers spend under the employer's control—including specifically compulsory travel and waiting time—must be considered "hours worked" pursuant to Wage Order No. 14–80. Thus, according to Wage Order No. 14–80, although D'Arrigo may use various schemes to compensate Plaintiffs, it nonetheless must pay its workers enough to compensate for compulsory waiting and travel time. Both the language of Wage Order No. 14–80 and the California Supreme Court's reasoning *in Morillion* suggest that an employer may use varied payment schemes [3] as long as the agricultural worker is paid no less than the sum the worker would have been paid during the pay period if the employer paid according to the following formula: number of hours worked (including compulsory waiting and travel time) during the pay period multiplied by the minimum wage as defined in Wage Order No. 14–80.[4] This formula applies whether D'Arrigo determined a worker's compensation according to a guaranteed minimum hourly wage, a piece rate wage, or some other method.[5] Accordingly, D'Arrigo is liable if it paid the agricultural workers less than what Wage Order No. 14–80 required during a pay period, regardless of how it determined the wages that it paid its employees.[6]

Plaintiffs argue that Wage Order No. 14–80 requires D'Arrigo to pay for *each*

---

**3.** Wage Order No. 14–80 specifically states that the piece-rate scheme is an appropriate payment plan, even though the piece-rate scheme as such does not include consideration of a minimum wage or the number of hours worked.

**4.** A hypothetical may be helpful. If, during a work period of two weeks, D'Arrigo paid a worker $20 per hour for sixty hours of harvesting in the fields and paid the worker $0 for twenty hours of mandatory waiting and travel time, it would have paid the worker $1,200 during the work period. If California law provided for a minimum wage of $10 per hour, then D'Arrigo would have been required to pay $10 times eighty hours, or a minimum of $800. While in this hypothetical scenario the worker was not compensated for *each actual hour* spent traveling and waiting, the worker actually received $400 more than the required minimum wage during the work period.

**5.** A second example may help further illustrate the Court's conclusion. Suppose D'Arrigo paid a worker $5 per unit of product harvested according to a "piece rate" payment scheme. According to section 4(b) of Wage Order No. 14–80, such remuneration merely must be greater than or equal to the "applicable minimum wage for all hours worked in the payroll period." Thus, if that worker harvested two hundred units, he or she would be paid $1,000. If the state law minimum wage were $10 per hour and the worker had worked, traveled, and waited for a total of eighty hours during the work period, the minimum wage for all hours worked in the payroll period would be $800. D'Arrigo would have paid the worker $200 more than required by the state law minimum wage for the work period.

**6.** The Court stresses that this conclusion applies to a determination of liability with respect to the minimum wage provisions of Wage Order No. 14–80. Nothing in this Order precludes the possibility of liability for failure to pay wages for "all hours worked" pursuant to the terms of a contract. There is no cause of action for breach of contract at issue herein.

*separate hour* of mandatory waiting and travel time *regardless of how much it paid them for other work during the work period.* Neither *Morillion* nor Wage Order No. 14–80 may be read so broadly. The parties have not provided and the Court is not aware of any binding legal authority that requires an employer to calculate an employee's pay on a variable hour by hour basis.[7] Section 4(b) of Wage Order No. 14–80 states that the employer must pay the employee on the established payday, not each hour. While *Morillion* holds that mandatory travel and waiting time must be considered part of "all hours worked," it does not hold that such hours are entitled to special status.

■ Although interpreting different statutes, numerous other courts have adopted the same approach as this Court. *See, e.g., United States Dep't of Labor v. Cole Enters., Inc.,* 62 F.3d 775, 780 (6th Cir.1995); *Hensley v. MacMillan Bloedel Containers, Inc.,* 786 F.2d 353, 357 (8th Cir.1986); *Dove v. Coupe,* 759 F.2d 167, 171 (D.C.Cir.1985); *Blankenship v. Thurston Motor Lines,* 415 F.2d 1193, 1198 (4th Cir.1969); *United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 490 (2nd Cir.1960); *Cuevas v. Monroe Street City Club, Inc.,* 752 F.Supp. 1405, 1416–17 (N.D.Ill.1990); *Marshall v. Sam Dell's Dodge Corp.,* 451 F.Supp. 294, 301–03 (N.D.N.Y.1978); *Travis v. Ray,* 41 F.Supp. 6, 9 (W.D.Ky.1941). While the provisions at issue in some of these cases do not necessarily require the total pay to be averaged for a work period, "the purpose of the minimum wage provisions is to protect certain groups of the population from sub-standard wages due to unequal bar-

gaining power. That purpose is met by the work [period] standard." *Dove,* 759 F.2d at 171 (internal citation omitted).

Plaintiffs appear to rely heavily on an interpretation by the California Department of Labor Standards Enforcement ("DLSE"). *See* Plaintiffs' Reply Memorandum in Support of Motion for Summary Judgment, filed February 26, 2004 ("Reply"), Attachment (DLSE Enforcement Policies and Interpretations Manual (2002) section 44.2.2); *see also* Plaintiffs' Memorandum in Support of Second Motion for Partial Summary Judgment, filed April 12, 2004, Attachment (January 29, 2002 Letter from DLSE (addressing IWC Wage Order No. 9–2001)). However, the California Supreme Court clearly has held that the DLSE's opinion is not binding authority, as the DLSE has not complied with the requirements of the Administrative Procedure Act. *Morillion,* 22 Cal.4th at 581, 94 Cal.Rptr.2d 3, 995 P.2d 139. Additionally, for the reasons stated above, the Court respectfully disagrees with the DLSE's opinion.

**B. D'Arrigo's Method of Compensation Failed to Comply with Applicable Law**

■ D'Arrigo essentially concedes that it did *not* compensate Plaintiffs *directly* for compulsory waiting and travel time, in that it did not record travel and waiting time and pay wages for those hours worked. *See, e.g.,* Defendant's Opposition to Plaintiffs' Motion for Summary Judgment, filed February 18, 2004 ("Opposition"), p. 19:23–24; Plaintiffs' Memorandum in Support of Motion for Summary Judgment, filed January 28, 2004 ("Motion"), Ex. 6 (Deposition of Manuel Paz, p. 60). It nonetheless ar-

---

**7.** Indeed, the Supreme Court has concluded that other payment schemes may be translated to hourly schemes in order to render them regulable by federal statute. *United States v. Rosenwasser,* 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301 (1945) ("[O]ther modes merely must be translated or reduced by computation to an hourly basis for the sole purpose of determining whether the statutory requirements have been fulfilled.").

gues that it compensated Plaintiffs for such time *indirectly* via its piece-rate payment scheme. At the same time, it admits that it followed the "practice of compensating employees for the 'greater of the day,' meaning that employees received either the piece-rate or guaranteed hourly minimum, whichever was greater for that day." [8] Opposition, p. 23:8–10. As already noted, D'Arrigo's guaranteed hourly minimum scheme did not take compulsory travel and waiting time into account directly. Thus, even accepting D'Arrigo's position, it is evident from the record that there were at least some instances in which Plaintiffs were not specifically compensated, even *indirectly*, for such time.

However, the dispositive issue for the purposes of the present motion is not whether D'Arrigo paid directly or indirectly for compulsory travel and waiting time, but rather whether its payment schemes, whether based on piece rate or an hourly wage, were insufficient pursuant to section 4 of Wage Order No. 14–80. That is, the threshold question for determining liability is *whether payment during a pay period in fact fell below that required by Wage Order No. 14–80 when compulsory waiting and travel time are taken into account.* It is undisputed that payments according to the piece rate scheme always were greater than those made according to D'Arrigo's lowest hourly wage. The record also establishes that sometimes employees were paid according to D'Arrigo's lowest hourly wage. If D'Arrigo's lowest hourly wage always compensated employees in an amount greater than that required by Wage Order No. 14–80 and *Morillion*, even if D'Arrigo failed to include travel and waiting time in its calculation of wages due, then D'Arrigo could not be liable for

violating the requirements of Wage Order No. 14–80.

▮▮▮ It is undisputed, however, that D'Arrigo failed to keep records of the time that employees spent traveling and waiting while under its control. Its Executive Vice President, James R. Manassero, stated that, while he *thought* employees were compensated for travel time via piece rate payments, the amount of time spent traveling was not recorded. D'Arrigo thus violated section 1831(c) of AWPA. Mr. Manassero admitted in his deposition that employees sometimes were required to travel between at least twenty-five and thirty-five minutes each way. Motion, Ex. 3 (Deposition of James R. Manassero, pp. 43:2 & 51:24). A supervisor testified that some travel times were at least fifty minutes each way, Motion, Ex. 4 (Deposition of Joel Cooper, p. 63), and these estimates do not include waiting time. Plaintiffs also have provided evidence (and the Court takes judicial notice) that some travel times were at least thirty-seven minutes each way. *See* Reply, Exs. 1 & 4.

The Court concludes on the basis of this undisputed evidence that D'Arrigo must have undercompensated Plaintiffs in at least some instances regardless of what payment scheme it used. For example, D'Arrigo's lowest hourly wage appears to have been $6 during some part of 1997 and $7.05 during some part of 1998. *See* Motion, Exs. 2 (Wage Schedule attachment to Gega Letter, Oct. 19, 1998, Art. 32.1.A.1) & 11 (Gega Letter, Mar. 24, 1997). Wage Order No. 14–80 set forth a minimum wage of $5 effective March 1997 and $5.75 effective March 1, 1998. Thus, if an employee worked for eight hours in the field and traveled and waited a total of two hours during the day,[9] D'Arrigo would

---

8. Additionally, some employees were never compensated via the piece-rate plan. *See, e.g.*, Motion, Ex. 2 (Deposition of John Snell, pp. 42–43 & 46).

9. Testimony indicates that some Plaintiffs traveled at least fifty minutes each way, resulting in a total of one hour and forty minutes of travel time. D'Arrigo did not keep

have paid the employee $48 per day during at least part of 1997 [10] and $56.40 per day during at least part of 1998 [11] if it paid according to its hourly wage plan. However, Wage Order No. 14–80 would have required payment of $50 per day during an equivalent part of 1997 [12] and $57.50 per day during an equivalent part of 1998.[13]

Indeed, the available evidence from D'Arrigo's database, *see* Declaration of Whitman T. Soule in Support of Plaintiffs' Motion for Summary Judgment, filed February 26, 2004 ("Soule Decl."), ¶ 3, confirms that in a sample of the computer records for travel to just three of the ranches, Plaintiffs were paid less than the average minimum wage 2,114 times between January 1999 and April 2000. *Id.* ¶ 14. This is so even if the lowest estimate of travel distance between Spreckels and the work sites consistent with the evidence is used. *Id.* ¶ 10. The evidence contained in D'Arrigo's own computer records, in combination with the general calculations set forth above, indicates that there is no genuine issue of material fact that D'Arrigo, at least on some occasions, underpaid Plaintiffs for work during the day.[14]

Finally, D'Arrigo has not offered any evidence that would permit a rational fact-finder to determine that it always did pay above the minimum required by Wage Order No. 14–80, including compensation for compulsory travel and waiting time. Its only comment with respect to this issue is that "[t]he guaranteed hourly minimum was an hourly wage previously set by Defendant for a given commodity. This hourly minimum was always greater than the California minimum wage in place at the time." Opposition, p. 3 n. 2. Even assuming for purposes of discussion that this statement is true, it does not address the question of whether D'Arrigo's hourly wage payment scheme provided payments great enough to overcome the effects of its having neglected to include compulsory travel and waiting time in the calculation. The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *Jackson,* 902 F.2d at 1389.

■■ Pursuant to the California Unfair Business Practices Act, California Business & Professions Code section 17203, Plaintiffs may seek restitution from employers for unlawfully withheld wages. *See Cortez v. Purolator Air Filtration*

---

records of travel or waiting time. A reasonable estimate of waiting time is twenty minutes per day, resulting in at least two hours of time that was not factored into D'Arrigo's hourly wage calculation. *See, e.g., Wales v. Jack M. Berry, Inc.,* 192 F.Supp.2d 1269, 1282 (M.D.Fla.1999) (concluding that "failure to maintain accurate records ... justifies giving the plaintiffs the benefit of the doubt [and] adjusting the average [number of hours worked per day] upward.").

10. Eight hours multiplied by $6.

11. Eight hours multiplied by $7.05.

12. Ten hours multiplied by $5.

13. Ten hours multiplied by $5.75.

14. As of the date on which the present motion was submitted and despite repeated orders by the magistrate judge that it do so, D'Arrigo still had not provided all of the required computer records, *see* Reply, p. 9, rendering calculation of wages paid for each employee for each work period extremely difficult. Plaintiffs nonetheless have demonstrated that D'Arrigo failed to pay minimum wage on at least two thousand days over the course of just five months. Under these circumstances, it is exceedingly unlikely that remuneration, while falling below the state-imposed minimum wage on so many daily occasions, always satisfied state law when calculated for the work period. Moreover, it is D'Arrigo itself, through its repeated failures to comply with the Court's discovery orders, that has required to Court to extrapolate from the daily records.

*Prods. Co.,* 23 Cal.4th 163, 173, 96 Cal. Rptr.2d 518, 999 P.2d 706 (2000). California Labor Code section 205.5 requires an employer to pay agricultural workers twice per month. Accordingly, to the extent that D'Arrigo failed to comply with Wage Order No. 14–80 twice per month, Plaintiffs may seek restitution of any unpaid earnings.

### IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that Plaintiffs' motion for summary adjudication is granted as follows:

(1) The Court concludes as a matter of law that Defendant has failed to pay wages due to at least some members of the class on some occasions as required by California Industrial Welfare Commission wage order No. 14–80, California Labor Code section 205.5, the California Unfair Business Practices Act, California Business and Professions Code sections 17200, *et seq.,* and section 1832(a) of the Migrant and Seasonal Agricultural Worker Protection Act; and

(2) The Court concludes as a matter of law that Defendant failed to record all hours worked and pay all wages when due pursuant to section 1831(c) of the Migrant and Seasonal Agricultural Worker Protection Act.