[Nos. B174806, B177501. Second Dist., Div. Six. Dec. 29, 2005.]

FRANK ARMENTA et al., Plaintiffs and Respondents, v.
OSMOSE, INC., Defendant and Appellant.

COUNSEL

Sedgwick, Detert, Moran & Arnold, Christina J. Imre, Leonora M. Schloss, Douglas J. Collodel and Karen F. White for Defendant and Appellant.

Carol D. Janssen; and James H. Cordes for Plaintiffs and Respondents.

OPINION

COFFEE, J.—Here we decide the proper method for determining whether California's minimum wage law has been violated under Labor Code section 1194 and how to calculate the waiting time penalties under section 203.[1]

Appellant Osmose, Inc. appeals from the judgment awarding its former employees, respondents, a total of $90,398.22 in unpaid minimum wages, liquidated damages under section 1194.2, waiting time penalties under section 203, and attorney's fees and costs in the amount of $301,625.40 and $7,110.97, respectively.

Appellant contends the judgment must be reversed because the trial court (1) failed to use an "averaging method" in determining whether it violated California's minimum wage law (§ 1194); (2) erred in finding that it had "willfully" withheld wages under section 203 and in calculating the waiting time penalties; and (3) erred by awarding attorney's fees to respondents.

We conclude the court erred in calculating the amount of the waiting time penalties. We reverse and remand for recalculation of those penalties but affirm the judgment in all other respects.

### Factual and Procedural Background

Appellant's business includes maintaining standing wood utility poles for major utility companies. At various times between November of 1996 and

---

[1] All statutory references are to the Labor Code unless otherwise stated.

November of 2000, respondents were employed as union employees of appellant and members of the Local Union 1245 of the International Brotherhood of Electrical Workers, AFL-CIO. Under the terms of the parties' collective bargaining agreement, respondents were paid hourly wages ranging between $9.08 to $20, depending on whether they were crew members or foremen.

Respondents' work in the field included maintaining utility poles in rural or extremely remote locations with difficult terrain. Appellant provided its crews with a utility truck which carried the tools, chemicals, and equipment needed to perform the work in the field. Typically, appellant required the foremen to designate places to meet in the morning and the crew was required to travel from there in appellant's vehicle to the job sites. On other occasions, respondents would meet at appellant's maintenance facility to pick up necessary supplies and, in the foremen's case, to turn in paperwork (or download information). The foremen were responsible for keeping daily records of the work performed in the field, including pole information, production statistics, and hourly timesheets for all crew members.

Employee hours were classified as productive or nonproductive, depending on whether the hours were directly related to maintaining the utility poles in the field. Appellant's employees, including the supervisors, foremen, and crew, were eligible for a bonus if they exceeded production norms. The production norm was a standard determined by appellant's regional office and varied depending on the size of the crew, the type of work, and the territory covered. The production norm required 90 percent efficiency (90 percent productive time).

At trial, respondents testified that they were not compensated for a myriad of tasks that primarily fell into the following categories: (1) travel time in company vehicles; (2) time spent loading equipment and supplies into the company vehicle; (3) time spent doing daily and weekly paperwork (foremen only); and (4) time spent in maintaining the company vehicles (foremen only). Respondents testified that time spent performing these tasks was considered nonproductive time.

In November of 2000, respondents filed the instant action in state court, electing not to pursue recovery for uncompensated time at their contractual hourly wages under their collective bargaining agreement, but instead alleging that appellant failed to pay minimum wages under section 1194. The complaint was styled as a "class action" and sought unpaid minimum wages under section 1194, liquidated damages under section 1194.2, waiting time

penalties under section 203, and damages for an unfair business practice under Business and Professions Code section 17200. Included in the minimum wage claim were allegations that appellant did not pay overtime wages.

Appellant subsequently removed the action to federal court, asserting that the action arose under section 301(a) of the Labor Management Relations Act and was preempted. (29 U.S.C. § 185(a).) To avoid removal, respondents stipulated to amend their complaint to strike all references to unpaid overtime wages and to instead seek only unpaid minimum wages under section 1194. The case was then remanded back to state court. Respondents filed an amended complaint and unsuccessfully attempted class certification. Following an unsuccessful mediation, the case proceeded to a 10-day bench trial on respondents' claims for violation of the state minimum wage law, liquidated damages, waiting time penalties under section 203, and an unfair business practice.

At trial, respondents presented lengthy testimony concerning the hours they worked for which they were not compensated. They testified they were not paid for maintaining the company truck, taking the truck to be serviced and waiting for it, washing it, cleaning it out at the end of the day, discarding trash at the end of the day, repairing tools needed for field work, or for their time driving to and from the job site. They testified that it was not practical to drive their own vehicles to some of the job sites because of the terrain or location of some of the poles (on roads, highways, or private property). Additionally, they presented passages from appellant's foreman's manual which required the crew to travel together and conduct work during the drive. Among the work performed while riding in the company vehicle were safety meetings, planning the day's work, training, and reviewing maps. Notwithstanding written employment policies stating that foremen would be paid for driving the company vehicle to and from job sites, the foremen testified they were not paid for their driving time. Despite written employment policies stating that employees would not be expected to do any work prior to arriving at a job site or after leaving the job site, respondents testified that they were required to load the trucks with steel and other supplies without compensation both before and after work. Generally, appellant's pay records showed only hours worked by respondents at the actual sites of the utility poles.

Respondents testified that the issue of being compensated for driving time was raised at a company meeting, but district managers declined to pay for it, stating that respondents' time started when they reached the first pole in the morning. One of the respondents was demoted after being particularly vocal

about his desire to be paid for this nonproductive time. Others reported the time on their time sheets but were never paid for it. Respondents maintained that supervisors instructed them not to report nonproductive time. They testified that reporting nonproductive time would make it difficult to meet production norms and obtain bonuses. Supervisors instructed them to do whatever it took to reach production norms.

In response, appellant produced several witnesses to rebut respondents' claims, including similarly situated foremen, a supervisor, an area manager, and a district manager. These individuals were in conflict as to whether employees would be compensated for driving time. Area Manager John Brown testified to a "one way commute policy," in which he deemed compensation was appropriate one way for drive time. Supervisor James Bushta testified the crew would not be paid and that compensable time excluded drive time and stopped upon completion of work at the last pole each day. Manager Kip Hughes testified that employees would be compensated for drive time only if they picked up supplies first. Other testimony established that crew and foremen were expected to record the same 40 hours per week, despite written employment policies allowing foremen to be paid for driving time.

In written arguments presented to the court, appellant contended that it had not violated California's minimum wage law (§ 1194) because respondents were compensated weekly at an amount exceeding the total hours worked multiplied by the applicable minimum wage. In other words, because respondents were paid an hourly wage far in excess of the minimum wage, appellant contended that respondents' weekly pay check exceeded the product of the total hours worked (paid and unpaid) and the minimum wage. Appellant argued that their *average* hourly rate in any given pay period was higher than California's minimum wage and, therefore, it had not violated section 1194. Appellant noted that this "averaging" method was consistent with the approach utilized by the federal courts.

Respondents contended that they were entitled to minimum wage for each uncompensated hour, plus statutory penalties and interest. Respondents relied on an opinion letter of the Department of Labor Standards Enforcement (DLSE) dated January 29, 2002. Appellant contended the DLSE opinion letter was not persuasive authority.

After taking the matter under submission, the trial court issued a 23-page decision finding in favor of respondents, ruling that appellant had violated

California's minimum wage law by not compensating respondents for travel time and for time spent on daily paperwork. (The court found that respondents had failed to prove nonpayment for time spent loading and maintaining the company vehicles.) The court agreed with appellant that the DLSE opinion letter was not controlling, but found its reasoning persuasive as to why, under California law, respondents were entitled to compensation for all hours worked. The court noted that section 1194 entitles an employee receiving less than the minimum wage to recover in a civil action the unpaid balance of the "full amount of this minimum wage." The court stated:

"As noted in the DLSE opinion, section 1194 is: [¶] 'susceptible to two divergent readings: 1) that the obligation to pay minimum wages attaches to each and every separate hour worked during the payroll period, and that payment must be made for all such hours on the established payday, or 2) that the obligation to pay minimum wages for the total number of hours worked in the pay period is determined "backwards" from the date that any payment is due, without considering any hour (or part of any hour) in isolation.'

"As noted in the opinion letter, . . . federal courts have consistently followed the latter approach. However, . . . California State law differs dramatically from the Federal Labor Standards Act ('FLSA') [*sic*: Fair Labor Standards Act]. As asserted in the opinion letter, . . . the combined force of California Labor Code sections 221, 222, and 223 require a different result under California law. Those statutes clearly prohibit an employer from receiving from the employee, withholding from the employee, or secretly paying to the employee, some amount less than the employee's actual agreed wages for work performed by the employee.

"Because [respondents] were employed at agreed rates substantially in excess of the minimum wage, employers such as [appellant] could effectively 'reduce' or 'withhold' a portion of an employee's agreed wage through the simple device of requiring work in excess of 40 hours without additional compensation, merely by relying upon those standards set forth in the FLSA now relied upon by [appellant]. . . . As succinctly (and persuasively) advanced in the DLSE opinion letter, California Labor Code sections 221, 222, and 223 prevent [appellant] herein: [¶] 'from using any part of the wage payments that are required under [their] CBA or other contract for activities that are compensated in an amount that equals or exceeds the minimum wage, as a credit for satisfying minimum wage obligations for those activities that are compensated at less than the minimum wage under the CBA or contract. . . .' " (Fn. omitted.)

The court concluded that adopting appellant's method of "averaging" would permit it to extract lengthy work weeks from its employees without

paying them for all hours worked, in violation of "our state's policy of liberally construing California wage and hour provisions for the benefit of employees . . . ."

The trial court awarded liquidated damages to respondents under section 1194.2 in an amount equal to the wages owed.[2] The court concluded that liquidated damages were appropriate given that appellant knew or should have known that it had an obligation to pay for driving time, the foreman's manual provided for such compensation, and the supervisors created a climate that strongly discouraged or disallowed the recording of time for daily paperwork processed by foremen in their evening hours. The court concluded that waiting time penalties under section 203 were also appropriate.

The court rejected respondents' claim for damages for an unfair business practice and ordered that judgment be entered in favor of respondents for a total of $90,398.22, representing minimum wages owed, liquidated damages under section 1194.2, and waiting time penalties under section 203.

Thereafter, respondents moved for an award of attorney's fees and costs in the amount of $716,919.40 pursuant to section 1194. Appellant opposed the motion, arguing that the court should reduce the fees requested to $223,925.50. Following a hearing, the court awarded respondents attorney's fees and costs in the amount of $308,736.37.

*Discussion*

*Violation of California's Minimum Wage Law*

Appellant contends the judgment must be reversed because the trial court used the wrong method to determine whether it had violated the state minimum wage law under section 1194. Appellant agrees that if an employee is compensated at minimum wage, section 1194 is violated if the worker is not paid for even a single hour. Appellant argues, however, that this same principle should not apply to workers, like respondents, whose hourly rate is negotiated under a collective bargaining agreement and is substantially higher than the minimum wage set by the government. Rather, when an employer pays a higher hourly rate, appellant argues it should be entitled to divide the total number of hours worked into the amount the employee was paid to

---

[2] Appellant does not challenge the award of liquidated damages in this appeal.

arrive at an average hourly wage and then determine whether the employee's compensation complied with the minimum wage law. Appellant urges us to adopt the averaging formula utilized by federal courts in assessing minimum wage law violations.

For example, in *Medrano v. D'Arrigo Bros. Co. of California* (N.D.Cal. 2004) 336 F.Supp.2d 1053 (*Medrano*), agricultural workers brought a class action against their employer seeking recovery of minimum wages due for travel time to fields as required by California Wage Order No. 14-80. (See also *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 587 [94 Cal.Rptr.2d 3, 995 P.2d 139] [time spent by agricultural workers under employer's control, including compulsory travel and waiting time, must be considered "hours worked" pursuant to Wage Order No. 14-80].) The federal district court interpreted California Wage Order No. 14-80 and held that an employer meets the minimum age requirements "as long as the agricultural worker is paid no less than the sum the worker would have been paid during the pay period if the employer paid according to the following formula: number of hours worked (including compulsory waiting and travel time) during the pay period multiplied by the minimum wage as defined in Wage Order No. 14-80. . . . This formula applies whether [the employer] determined a worker's compensation according to a guaranteed minimum hourly wage, a piece rate wage, or some other method. . . . Accordingly, [the employer] is liable if it paid the agricultural workers less than what Wage Order No. 14-80 required during a pay period, regardless of how it determined the wages that it paid its employees. . . ." (*Medrano*, at p. 1057, fns. omitted.)

The *Medrano* court noted that numerous federal courts had adopted this averaging formula in assessing minimum wage law violations, albeit under different statutes. (*Medrano, supra*, 336 F.Supp.2d at p. 1058, citing *U.S. Dept. of Labor v. Cole Enterprises, Inc.* (6th Cir. 1995) 62 F.3d 775, 780; *Hensley v. MacMillan Bloedel Containers* (8th Cir. 1986) 786 F.2d 353, 357; *Dove v. Coupe* (D.C.Cir. 1985) 245 U.S. App. D.C. 147 [759 F.2d 167, 171]; *Blankenship v. Thurston Motor Lines, Inc.* (4th Cir. 1969) 415 F.2d 1193, 1198; *United States v. Klinghoffer Bros. Realty Corp.* (2d Cir. 1960) 285 F.2d 487, 490.) The *Medrano* court rejected the DLSE letter opinion found persuasive by the trial court here.

█ California courts have long recognized that California's wage laws are patterned on federal statutes and that authorities construing those federal statutes provide persuasive guidance to state courts. (*Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 658 [224 Cal.Rptr. 688, 715 P.2d 648]; *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 817 [105 Cal.Rptr.2d 59].) However, courts recognize an

important qualification on the relevance of federal authorities in this area: the state is empowered to go beyond the federal statutes and regulations in adopting protective laws and regulations for the benefit of employees. The federal authorities are of little assistance, if any, in construing state laws and regulations that provide greater protection to workers. (*Bell*, at pp. 817–818.) Similarly, where the language or intent of state and federal labor laws substantially differs, reliance on federal regulations or interpretations to construe state regulations is misplaced. (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 798 [85 Cal.Rptr.2d 844, 978 P.2d 2].)

As respondents observe, the minimum wage provisions of the FLSA differ significantly from California's minimum wage law. FLSA requires payment of minimum wage to employees who "in any work week" are engaged in commerce. In contrast, section 1194, subdivision (a) provides that any employee receiving "less than the legal minimum wage" is entitled to recover the unpaid balance of the "full amount" owed. The minimum wage applicable to respondents is set forth in California Wage Order No. 4, section 4(A), which currently provides: "Every employer shall pay to each employee wages not less than . . . [$6.75] per hour *for all hours worked.*" (Italics added.) Wage Order No. 4, section 4(B) provides: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage *for all hours worked* in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." (Italics added.) This language expresses the intent to ensure that employees be compensated at the minimum wage for each hour worked. The averaging method utilized by the federal courts for assessing a violation of the federal minimum wage law does not apply here.

Sections 221, 222, and 223 articulate the principal that all hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation. For example, section 221 provides: "It shall be unlawful for any employer to collect or receive from an employee *any part of wages* theretofore paid by said employer to said employee." (Italics added.) Section 222 provides: "It shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either willfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee *any part of the wage agreed upon.*" (Italics added.) Finally, section 223 provides: "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." As the trial court noted, adopting the averaging method advocated by respondents contravenes these code sections and effectively reduces respondents' contractual hourly rate. Federal law provides no analogous provisions to sections 221–223.

A review of our labor statutes reveals a clear legislative intent to protect the minimum wage rights of California employees to a greater extent than federally. California employees are allowed a higher minimum wage than the federal statutes allow ($5.15 per hour federally under 29 United States Code section 206(a)(1) compared to $6.75 per hour in California). As another example, FLSA allows a subminimum wage to be paid to new hires under 20 years of age for the first 90 days of employment. (29 U.S.C. § 206(g)(1).) By contrast, California law limits the subminimum wage to the first 160 hours (approximately 20 days). (Cal. Code Regs., tit. 8, §§ 11010–11150.) Also, an employer may pay student learners in vocational training programs 75 percent of the minimum wage under federal law (29 C.F.R. § 520.200 et seq. (2005)), whereas California law increases that amount to no less than 85 percent of the minimum wage. (Cal. Code Regs., §§ 11010–11050.) Finally, the FLSA gives employers a tip credit for employees earning tips. (29 U.S.C. § 203(m); 29 C.F.R. § 531.50.) California law expressly forbids a tip credit and employees must receive the full minimum wage. (Lab. Code, § 351.) All of these examples demonstrate that California provides greater protections to its minimum wage employees.

While the averaging method utilized by the federal courts to assess whether a minimum wage violation has occurred may be appropriate when considered in light of federal public policy, it does not advance the policies underlying California's minimum wage law and regulations. California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked. We conclude, therefore, that the FLSA model of averaging all hours worked "in any work week" to compute an employer's minimum wage obligation under California law is inappropriate. The minimum wage standard applies to each hour worked by respondents for which they were not paid. The trial court, therefore, correctly determined that appellant violated section 1194 by failing or refusing to pay for driving time and time spent by foremen processing paperwork.

We reject appellant's contention that the trial court improperly relied upon the DLSE opinion letter in interpreting section 1194. The trial court properly noted that the opinion letter was not entitled to deference and did not have the force of law. (See *Morillion v. Royal Packing Co., supra,* 22 Cal.4th at p. 582; *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 576–577 [59 Cal.Rptr.2d 186, 927 P.2d 296].) The court simply found persuasive, as we do, the reasoning expressed in the letter.

*Ambroz v. Ireland* (1954) 126 Cal.App.2d 85 [271 P.2d 580], and *Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487 [257 Cal.Rptr. 924], cited by appellant, are inapposite.

*The Award of Waiting Time Penalties under Section 203*

The trial court awarded respondents $23,760 in waiting time penalties pursuant to section 203. That section provides in relevant part: "If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

Appellant contends that waiting time penalties should not have been imposed because there was no evidence that it "willfully" failed to pay minimum wages. Appellant argues that: (1) it did not have actual knowledge of the wages owed because respondents had not reported their time; (2) the trial court rejected as "exaggerated" more than half of their claimed hours; and (3) a good faith dispute existed as to whether respondents were owed any amount at all given that the only published case law on the issue utilized the averaging method to determine a minimum wage law violation.

■ "[T]o be at fault within the meaning of [section 203], the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due. As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act *which was required to be done*." (*Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 7 [177 Cal.Rptr. 803].) A good faith belief in a legal defense will preclude a finding of willfulness. (*Id.* at pp. 8–9.)

In *Barnhill*, the employer lent its employee a sum of money in exchange for execution of a promissory note. The employee was later discharged and the employer offset the amount due on the note against the wages owed for the last two-week period. The Court of Appeal reversed the waiting time penalties imposed by the trial court under section 203, holding that the employer's good faith defense to the wage claim based on the equitable defense of setoff precluded a finding of willfulness. Because the state of the law in California was unclear as to whether a setoff was appropriate, *Barnhill* reasoned that the employer should not be penalized for believing the setoff was proper and payment of wages not required. (*Barnhill v. Robert Saunders & Co., supra,* 125 Cal.App.3d at pp. 8–9.)

Here, as appellant observes, no California court had addressed the propriety of arriving at an average hourly wage to determine whether the minimum wage law was violated. Federal courts uniformly utilized an averaging method in determining whether an employee was paid less than the minimum

wage. Nevertheless, evidence was presented at trial showing that appellant was aware that employees were not being compensated for nonproductive time. The trial court found that appellant's supervisors created an environment in which the foremen were strongly discouraged from recording time spent by themselves and the crew performing nonproductive tasks. Respondents testified that they raised the issue to supervisors but were told by supervisors and area managers that they would not be compensated for such time. In short, the evidence showed that appellant's failure to pay for nonproductive time was intentional and willful. This evidence supports the award of waiting time penalties.

Appellant also contends the trial court erred in calculating the amount of the waiting time penalties under section 203 by using the hourly rate due under the collective bargaining agreement rather than the minimum wage claimed by respondents. Appellant maintains that the penalties awarded reflect respondents' contractual daily wage over the maximum period of 30 days that each respondent remained unpaid. Appellant states that penalties, if warranted, should not have exceeded $6,636.

Because respondents were claiming a violation of the minimum wage law, we agree that penalties under section 203 must be assessed by arriving at a daily wage using the minimum wage claimed by each respondent. We observe that respondents have not addressed this contention in the answering brief and it is not clear from the record what the appropriate amount of penalties should be using the minimum wage. Accordingly, we will remand this matter to the trial court for a recalculation of the penalties due under section 203 using the minimum wage claimed by each respondent.

### The Award of Attorney's Fees

Section 1194 provides that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Appellant does not challenge the amount of the fees or costs awarded by the trial court. In light of our conclusion, above, that respondents were entitled to unpaid minimum wages, the trial court properly awarded respondents attorney's fees and costs.

*Disposition*

The judgment is reversed and remanded with instructions to the trial court to redetermine the amount of waiting time penalties due under section 203 using the minimum wage claimed by each respondent. In all other respects, the judgment is affirmed. Pursuant to section 1194, respondents shall recover their attorney's fees and costs on appeal, in an amount to be determined by the trial court on remand.

Gilbert, P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 15, 2006, S141015. George, C. J., did not participate therein. Werdegar, J., was of the opinion that the petition should be granted.