**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 15 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JACQUELINE F. IBARRA, an individual, on behalf of themselves and all others similarly situated,<br><br>    Plaintiff-Appellee,<br><br> v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant-Appellant. | No.    18-55626<br><br>D.C. No.<br>2:17-cv-04344-PA-AS<br><br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted November 7, 2019
Submission Vacated November 12, 2019
Resubmitted April 15, 2020
Pasadena, California

Before:  SCHROEDER, FRIEDLAND, and R. NELSON, Circuit Judges.

Plaintiff Jacqueline Ibarra ("Plaintiff"), a mortgage broker for Wells Fargo

Bank, N.A. ("Wells Fargo"), brought a putative class action alleging that Wells

Fargo's commission-based compensation plan violated California Labor Code

---

        *    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

section 226.7 by not separately compensating her for time spent on rest breaks. The district court certified a class of Wells Fargo employees who sold mortgages ("Plaintiffs"). Based on a set of facts stipulated to by the parties, the district court granted summary judgment for Plaintiffs and awarded damages of $97,284,817.91. We affirm in part and remand in part.[1]

1. Under *Vaquero v. Stoneledge Furniture LLC*, 214 Cal. Rptr. 3d 661 (Ct. App. 2017), *review denied* (June 21, 2017), Plaintiffs are correct that Wells Fargo's compensation method violated California's rest break requirements. Section 226.7 provides: "If an employer fails to provide an employee a . . . rest . . . period in accordance with a state law, . . . the employer shall" be liable. Cal. Lab. Code § 226.7(c).[2] In *Vaquero*, the California Court of Appeal first held that the applicable wage order entitled "employees [who were] paid on commission . . . to separate compensation for rest periods mandated by state law." *See* 214 Cal. Rptr. 3d at 663; *see also id.* at 665-73. The court of appeal then held that the employer's commission-based compensation plan "violate[d] this requirement" of separate compensation, *see id.* at 663, which meant that the employer had not complied with section 226.7's mandate to "provide . . . employee[s] . . . rest . . . period[s] *in*

---

[1] Wells Fargo's motion for judicial notice and Plaintiff's motion for judicial notice are granted.

[2] Unless otherwise stated, all statutory provisions cited in this memorandum disposition are provisions of the California Labor Code.

*accordance with . . . state law*," *see id.* at 666 (emphasis added) (quoting section 226.7); *see also id.* at 675.

*Vaquero*'s reasoning drew from other California law precedents that the California Supreme Court has declined to disturb, *see, e.g.*, 214 Cal. Rptr. 3d at 669 (discussing *Armenta v. Osmose, Inc.*, 37 Cal. Rptr. 3d 460 (Ct. App. 2005), *review denied* (Mar. 15, 2006)), and the California Supreme Court denied review in *Vaquero* itself. We thus have no reason to think the California Supreme Court would decide *Vaquero* any differently than the court of appeal did. *See Ryman v. Sears, Roebuck and Co.*, 505 F.3d 993, 995 (9th Cir. 2007) ("[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." (alteration in original) (quoting *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2011))).

Although Wells Fargo attempts to draw distinctions, its commission-based compensation plan was virtually identical to the compensation plan that *Vaquero* held violated section 226.7.[3] Because the commission-based approach here is

_____

[3] *Vaquero*'s holding that state law entitled the plaintiffs in that case "to separate compensation for rest periods mandated by state law" was based on the wage order that applied to the plaintiffs. *See* 214 Cal. Rptr. 3d at 663, 668-73. A different wage order governs Plaintiffs in this case, but the relevant provisions of the order here and the order in *Vaquero* are the same. *Compare* Cal. Code Regs. tit. 8, § 11040(12)(A)-(B), *with* Cal. Code Regs. tit. 8 § 11070(12)(A)-(B).

mathematically equivalent to that in *Vaquero*, it yields the same violation of state law that occurred in *Vaquero*.

**2.** We are unpersuaded by Wells Fargo's argument that section 226.7(c)'s remedy applies only when an employer fails to actually provide rest breaks, and not when an employer fails to separately compensate employees for rest breaks. *Vaquero* is premised on section 226.7(c)'s providing a remedy in the latter scenario. In *Vaquero*, the plaintiffs were actually provided rest breaks but alleged that they had not been properly compensated for breaks. *See* 214 Cal. Rptr. 3d at 664. The California Court of Appeal ruled in favor of the plaintiffs, holding that "the trial court erred in granting summary adjudication on the plaintiffs' cause of action for violation of section 226.7." *Id.* at 675. If there were no remedy for improper compensation, it would be hard to make sense of *Vaquero*'s holding allowing the plaintiffs' claim to proceed. Thus, we again follow *Vaquero* and hold that section 226.7(c) provides a remedy to Plaintiffs.[4]

**3.** We reject Wells Fargo's argument that damages should be reduced to

---

[4] Wells Fargo argues that *Kirby v. Immoos Fire Protection, Inc.*, 274 P.3d 1160 (Cal. 2012), supports its position that section 226.7(c) only provides a remedy for failure to actually provide rest breaks. But *Kirby* "simply did not address" the question whether there is a remedy under section 226.7(c) for failure to properly compensate employees for rest breaks. *Cf. Am. Triticale, Inc. v. Nytco Servs., Inc.*, 664 F.2d 1136, 1143 (9th Cir. 1981) (explaining that we are obligated to follow a decision of the state court of appeals absent a state supreme court decision "which directly addresses [the] issue").

account for the 961 class members who Wells Fargo asserts earned only hourly pay. Even if Wells Fargo is not liable to any class members who earned only hourly pay, it has not met its burden of establishing the number of such class members—a figure that could likely only be discovered from Wells Fargo's own records. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1031 (9th Cir. 2014) (en banc) (explaining that defendants have the burden of showing they are entitled to an offset of damages). The parties stipulated only to the fact that "Wells Fargo's expert ha[d] identified 961" class members for whom "Wells Fargo contends the payroll records reflect" no "commissions or other non-discretionary pay beyond" hourly pay. Because Plaintiffs never stipulated that there were in fact 961 class members who earned only hourly pay, and there is no other basis in the record for the reduction in damages Wells Fargo urges, the district court did not err in refusing to order that reduction.

4. The final question presented in this appeal is how to calculate Plaintiffs' damages under section 226.7(c). Under that provision, "[i]f an employer fails to provide an employee a . . . rest . . . period in accordance with a state law, . . . the employer shall pay the employee one additional hour of pay *at the employee's regular rate of compensation* for each workday that the . . . rest . . . period is not provided." Cal. Lab. Code § 226.7(c) (emphasis added). Wells Fargo argues that "regular rate of compensation" includes only hourly pay. Plaintiffs, on the other

hand, contend that "regular rate of compensation" has the same meaning as "regular rate of pay" under section 510—and "regular rate of pay" includes both hourly pay and nonhourly pay such as commissions and bonuses.

The only California Court of Appeal decision interpreting "regular rate of compensation" under section 226.7(c) is *Ferra v. Loews Hollywood Hotel, LLC*, 253 Cal. Rptr. 3d 798 (Ct. App. 2019), *review granted*, 456 P.3d 415 (Jan. 22, 2020), which held that "regular rate of compensation" included only the plaintiff's "base hourly wage" and did not include "her nondiscretionary quarterly bonus." *Id.* at 802-03. *Ferra* rejected the argument that "regular rate of compensation" is synonymous with "regular rate of pay" under section 510. *See id.* at 802-08. After we heard oral argument in this case, the California Supreme Court granted review in *Ferra* to consider whether "the [California] Legislature intend[ed] the term 'regular rate of compensation' in Labor Code section 226.7 . . . to have the same meaning and require the same calculations as the term 'regular rate of pay' under Labor Code section 510(a)." *See Ferra v. Loews Hollywood Hotel*, 456 P.3d 415 (Cal. 2020).

In light of the California Supreme Court's grant of review in *Ferra* and the particular circumstances created by the parties' stipulations in this case, we determine that the most prudent course of action is to remand the damages calculation issue to the district court with the instructions described below. *See*

6

*generally* 28 U.S.C. § 2106 (empowering courts of appeals to "remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances"); *Bank of China v. Wells Fargo Bank & Union Tr. Co.*, 190 F.2d 1010, 1012 (9th Cir. 1951) (explaining that "[t]his court has the power to make such disposition of the case as justice may require").

Importantly, the parties have stipulated that class-wide damages would total $97,284,817.91 under Plaintiffs' interpretation of "regular rate of compensation" and $24,472,114.36 under Wells Fargo's interpretation (leaving a difference of $72,812,703.55 under dispute). In other words, Wells Fargo has agreed to a minimum damages amount ($24,472,114.36) that it would owe if it were liable for rest break violations (which we have concluded it is under *Vaquero*, as explained above), regardless of the outcome reached by the California Supreme Court in *Ferra*.[5]

Because of the parties' stipulation, we know that Plaintiffs are entitled to at least $24,472,114.36 in damages for Wells Fargo's violation of section 226.7. We

---

[5] Plaintiffs have argued that, even if the plaintiff loses in *Ferra*, Wells Fargo could be liable for more than $24,472,114.36 because the compensation scheme here differs from that in *Ferra*. If, on the other hand, the California Supreme Court rules in favor of the plaintiff in *Ferra*, Wells Fargo has not offered any theory for how it could avoid paying the larger stipulated-to amount of $97,284,817.91, let alone the smaller amount of $24,472,114.36.

see no reason why Plaintiffs should have to wait for a decision in *Ferra*—which they explain "could take two years . . . or more"—before obtaining compensation in an amount that has already been stipulated to (and that therefore requires no further fact-finding by the district court or further review by our court). We thus instruct the district court on remand to order payment of $24,472,114.36 by Wells Fargo. We leave it to the district court to decide the amount of any additional payment owed due to post-judgment interest, any implications of the pending attorney's fees appeal for payment of the damages to Plaintiffs, and any other questions of allocation to Plaintiffs.

As to the remaining $72,812,703.55 between the stipulated damages alternatives, we cannot determine whether Plaintiffs are entitled to those damages without interpreting section 226.7(c)'s reference to "regular rate of compensation"—the very issue that the California Supreme Court is positioned to resolve in *Ferra*. We think the better course of action is not to decide this important question of state law ourselves, but to leave that question in the hands of the California Supreme Court. *See generally Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law, and . . . we are bound by their constructions except in extreme circumstances." (citations omitted)). We acknowledge that holding part of this case for *Ferra* will prolong the litigation. But if we were to answer the question differently from the California

Supreme Court, this case could potentially reach final judgment with a misallocation of tens of millions of dollars. We can be sure to avoid that result by declining to take the first pass at the state law question presented in *Ferra*. We therefore instruct the district court to stay the remaining $72,812,703.55 in potential stipulated damages pending a decision in *Ferra*. Although some judicial economy might be lost by remanding to the district court, the fact that the parties have stipulated to alternative damages amounts—leaving only the question of which legal approach to calculating damages is correct—significantly narrows the scope of what remains to be resolved in any further proceedings.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART AND REMANDED IN PART WITH INSTRUCTIONS.**

*Ibarra v. Wells Fargo Bank*, No. 18-55626

Schroeder, Circuit Judge, concurring in part and dissenting in part:

I agree that the issue of liability must be decided now in favor of Plaintiffs. *See Vaquero v. Stoneledge Furniture LLC*, 214 Cal. Rptr. 3d 661 (Ct. App. 2017). I would not delay our decision on the remaining issues until the California Supreme Court decides *Ferra v. Loews Hollywood Hotel, LLC*, 253 Cal. Rptr. 3d 798 (Ct. App. 2019), *review granted*, 456 P.3d 415 (Jan. 22, 2020).  That could take years.  In my view, as was noted in *Ferra*, *id.* at 807 & n.7, this case is materially distinguishable, and I would affirm the district court's damages determination.



*Ibarra v. Wells Fargo Bank, N.A., et al.*, No. 18-55626

NELSON, R., Circuit Judge, concurring in part and dissenting in part:

I join the majority in remanding the damages calculation to the district court pending the California Supreme Court's decision in *Ferra v. Loews Hollywood Hotel*, 456 P.3d 415 (Cal. 2020). *See Herrera v. Zumiez, Inc.*, No. 18-15135, 2020 WL 1301057, at *14 (9th Cir. Mar. 19, 2020) (R. Nelson, J., concurring) (noting federalism interest in deferring to state courts on state law issues).

I part ways with the majority, however, over the baseline damages figure. Specifically, I would reverse the district court's grant of summary judgment to Appellees-Plaintiffs for 961 Wells Fargo employees who received fully-vested hourly wages, where there is no evidence that these employees received commissions or other non-discretionary pay. Because a dispute of material fact exists with respect to these 961 employees, the majority erroneously affirms the district court's award of $1,849,307.09 in damages that Appellees are not entitled to on summary judgment.

The parties stipulated that if the damages provision of the statute were applied to all the qualifying shifts, the damages would be $24,472,114.36 or $97,284,817.91. Critically, however, the parties did not stipulate to the underlying liability warranting that full damage amount; instead, they stipulated that if the qualifying shifts of the 961 class members were deemed not to generate any

damages, then the "damages figures would be reduced to either $22,622,807.27 or $95,435,510.81."

The majority's decision to affirm the district court rests on two errors. First, the majority adopts, without discussion, the district court's liability determination. Because Appellants contend these employees did not earn commissions or other non-discretionary pay, the predicate for Wells Fargo's liability in this case—recoupment of hourly pay against commissions or non-discretionary pay—is absent. Finding liability for the 961 employees who only earned hourly wages on summary judgment, when all inferences were to flow to Appellants, was error. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Second, the majority interprets the stipulation as a request by Appellants for a set off. But the stipulation is better read as embodying a dispute whether the 961 employees suffered any damages *at all*, despite being subject to compensation plans that did not comply with California's wage laws. This reading makes more sense as the stipulation was, in essence, codifying *Appellants'* expert report finding that the 961 employees were not damaged. Appellees may have disagreed with that report, but awarding them damages solely based on their disagreement was error.

2

Accordingly, I respectfully dissent from the majority's decision to award Appellees $1,849,307.09 in damages for the 961 employees who did not receive any commissions or other discretionary pay.