Filed 11/20/23  San Diego California Lodge v. Div. of Labor Standards etc. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SAN DIEGO CALIFORNIA LODGE LLC,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>CALIFORNIA DIVISION OF LABOR STANDARDS ENFORCEMENT,<br><br>　　　Defendant and Respondent. | D080331<br><br><br><br>(Super. Ct. No. 37-2020-00003229-CU-WM-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Higgs Fletcher & Mack, John Morris, Rachel M. Garrard and Steven Brunolli; Douglas G. Nareau for Plaintiff and Appellant.

Jessica Lynn Fry for Defendant and Respondent.

Defendant and respondent Division of Labor Standards Enforcement (DLSE) cited plaintiff and appellant San Diego California Lodge (California

Lodge) for Labor Code[1] violations relating to its compensation of its hotel employees.  Following an investigation, DLSE ordered California Lodge to pay assessments and penalties for the violations.  After an unsuccessful administrative appeal, California Lodge filed a petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5, which the superior court denied.

California Lodge contends:  (1) As it paid its housekeepers at least the minimum wage, all penalties and assessments must be reversed; 2) the hearing officer inaccurately calculated the penalties and assessments because he misapplied the statute of limitations;  3) DLSE did not exercise its broad discretion in deciding whether to charge certain violations and what penalties and assessments to impose; and (4) the hearing officer violated California Lodge's due process rights because after the hearing, he computed final penalties and assessments based on his appointed independent auditor's appraisal, which was not subject to cross-examination.  We affirm.

FACTUAL AND PROCEDURAL SUMMARY

In May 2018, DLSE mailed a letter to California Lodge formally notifying it of commencement of investigation for possible Labor Code

---

[1]     Undesignated statutory references are to the Labor Code.

2

violations.[2]  Subsequently, DLSE Deputy Labor Commissioner, Celina Damian, directed an auditor to audit the wages of California Lodge's housekeepers and other employees.

Following its investigation, DLSE in October 2018 cited California Lodge for violation of minimum wage laws, overtime provisions, and itemized wage statements for its housekeepers for the period from May 1, 2015 to March 28, 2018.  DLSE also ordered it to pay certain penalties and assessments, including waiting time and liquidated damages.  In February 2019, DLSE amended the citations to add penalties and assessments for California Lodge's failure to pay non-productive rate, and ordered it to pay $218,550.56 in citation number WA 469620, plus $46,250 in citation number PA 469621.

California Lodge appealed the penalties and assessments to the Labor Commissioner.  Following a hearing, the hearing officer affirmed most of the penalties and assessments in a comprehensive "findings and order."

---

[2]     The notification stated:  "This is to inform you that the State Labor Commissioner's Bureau of Field Enforcement has commenced an investigation against [California Lodge] for potential violations of the Labor Code, applicable wage order . . . or applicable local minimum wage or overtime law, for the time period of 3 years before the date of this notice until the conclusion of the investigation.  Pursuant to . . . Section 90.6, any applicable statute of limitations for determining the 'period of time for which wages, penalties, damages, or other amounts [which] may be assessed by the Labor Commissioner' will be tolled for a period of twelve months from the date of this notice which is May 1, 2019. [*sic*] [¶]  After expiration of this twelve-month period, the statute of limitations for any of the potential violations under investigation will resume running."

*The Hearing Officer's Factual Findings and Conclusions of Law*

California Lodge does not challenge the hearing officer's factual findings. It instead concedes his findings and order "includes an extensive section . . . that summarizes the testimony of each of the witnesses. [¶] California Lodge acknowledges all of that testimony, and its appeal does not challenge any of the trial court's [*sic*] specific findings of fact." Accordingly, we need not set forth the testimony of the different witnesses. Instead, we summarize the hearing officer's factual findings and legal conclusions.[3]

*Waiting Time Penalties*

In addressing California Lodge's claims regarding waiting time penalties under section 203,[4] and its contention it compensated its housekeepers according to an incentive program, the hearing officer ruled: "Here the facts indicate that the formula or payment plan was not fully disclosed to employees, and not clearly reflected in the paystubs. [California Lodge's] argument that the workers did not receive piece-rate is not persuasive." The hearing officer added: "The itemized wage statement *did not reflect that each housekeeper received a base rate of pay and incentive pay.* The itemized wage statement reflected payment, as ROOM, for total rooms

---

[3]    The hearing officer listed DLSE's witnesses as Deputy Damian, the auditor, and a California Lodge housekeeper. The witnesses for California Lodge were two housekeepers , California Lodge's office manager and Juan Garza, a former Deputy Labor Commissioner.

[4]    Section 203 provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with [specified Labor Code sections] any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

4

cleaned at the applicable room rate.  [California Lodge] paid either piece-rate or minimum wage to a housekeeper based on the daily reconciliation of rooms cleaned.  There was no calculation reflected on the itemized wage statements that every minute worked was paid at a base rate, and then a separate compensation for earnings above minimum wage or base rate."  (Italics added.)  The hearing officer concluded:  "[California Lodge's] argument that housekeepers are not owed wages because they were paid a base rate plus incentive, not piece-rate, is unsupported by evidence.  . . . .[T]he evidence supports a finding that [California Lodge] paid workers piece-rate.  [It] failed to pay for non-productive time, for rest periods pursuant to [section] 226.2, and failed to pay the correct overtime premium as required by law.  [Its] argument is not supported by the evidence presented at the hearing, and thus precludes a finding of a 'good faith dispute.' "

The hearing officer ruled California Lodge did not compensate the housekeepers' non-productive time and rest periods under section 226.2[5] "The evidence supports a finding that ten (10) minutes of non-productive time for housekeepers filling carts was a conservative estimate and not incidental

---

[5]     Section 226.2 provides:  "This section shall apply for employees who are compensated on a piece-rate basis for any work performed during a pay period.  This section shall not be construed to limit or alter minimum wage or overtime compensation requirements, or the obligation to compensate employees for all hours worked under any other statute or local ordinance.  For the purposes of this section, 'applicable minimum wage' means the highest of the federal, state, or local minimum wage that is applicable to the employment, and 'other nonproductive time' means time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate basis.  [¶]  (a) For employees compensated on a piece-rate basis during a pay period, the following shall apply for that pay period:  [¶]  (1) Employees shall be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation."

to the production of cleaning the rooms.  The testimony of the witnesses supported DLSE's assumption that housekeepers routinely needed to fill their carts. . . . The amount of time that a housekeeper spent walking to and from the housekeeping room to gather supplies each day more than likely exceeded ten (10) minutes per day.  The filling of an empty cart took eight and a half minutes, and that did not include the time spent walking to and from the work area.  Therefore, the evidence and testimony supports a finding that housekeepers spent at least (10) minutes per day refilling the carts and gathering other materials to perform their room cleaning duties. [¶]  Thus, on days where housekeepers earned piece-rate wages, [California Lodge] failed to compensate housekeepers for the time spent filling carts or making trips to the housekeeper room or laundry.  This is supported by the finding that [California Lodge] did not pay a base rate for all hours worked, but paid piece-rate, which does not compensate time not producing, or time spent not cleaning the rooms.  [¶]  On days where the housekeeper earned minimum wage or the base rate, and [California Lodge] paid an hourly rate, [it] compensated the housekeeper for non-productive time and rest periods. However, on the days where housekeepers earned piece-rate, or per room rates, [it] failed to compensate the housekeeper for non-productive time and rest periods."

*Liquidated Damages*

The hearing officer affirmed DLSE's imposition of liquidated damages on California Lodge for its failure to pay the housekeepers overtime

6

compensation under section 1194.2, subdivision (a),[6] finding California Lodge did not act in good faith and with objective reasonableness: "Piece-rate workers must be compensated for the time not producing. The facts do not support [California Lodge's] assertion that these workers did not earn piece-rate. [California Lodge's] itemized wage statements do not include all hours worked at a specific rate. *The itemized wage statements indicate that each housekeeper earned rates per rooms cleaned not an hourly rate plus incentives.* Housekeepers earned wages only when cleaning the room. When a housekeeper spent time on other duties, or on a rest period, [California Lodge] paid no wages. [It] invalidly and contrary to the holding of [*Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314 (*Armenta*)] averaged the earnings from time cleaning the room to compensate for rest periods and non-producing time. Thus, [California Lodge's] argument is not grounded in objective reasonableness, as it is contrary to established case law. [¶] [California Lodge] failed to establish that housekeepers earned minimum wage for every hour worked. [It] failed to establish an affirmative defense based in good faith and objective reasonableness." (Italics added.)

---

[6] Section 1194.2 provides for liquidated damages: "a) In any action under [specified Labor Code sections] to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. . . . .[¶] (b) Notwithstanding subdivision (a), if the employer demonstrates to the satisfaction of the court or the Labor Commissioner that the act or omission giving rise to the action was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of any provision of the Labor Code relating to minimum wage, or an order of the commission, the court or the Labor Commissioner may, as a matter of discretion, refuse to award liquidated damages or award any amount of liquidated damages not exceeding the amount specified in subdivision (a)."

7

*Itemized Wage Statements*

The hearing officer addressed the claim of violation of itemized wage statements in section 226.3,[7] pointing out California Lodge "requested that [DLSE] use discretion and dismiss the citation due to compliance with the statute, or in the alternative due to inadvertence." The hearing officer rejected that claim: "The evidence supports a finding that [California Lodge] failed to issue itemized wage statements that provided the gross wages earned by each employee. There is no evidence that the failure to issue accurate itemized wage statements was inadvertent. Additionally, [it] did not provide any argument that the failure to issue itemized wage statements in compliance with [section] 226 was inadvertent."

*Statute of Limitations*

The hearing officer applied a one-year statute of limitations to civil penalties, concluding "DLSE conducted the audit for the civil penalty assessment for [citation numbers] WA 469620 and PA 469621 for the period May 2, 2017, through March 28, 2018.[8] It applied a three-year statute of

---

[7]    Section 226.3 provides: "Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226. The civil penalties provided for in this section are in addition to any other penalty provided by law. In enforcing this section, the Labor Commissioner shall take into consideration whether the violation was inadvertent, and in his or her discretion, may decide not to penalize an employer for a first violation when that violation was due to a clerical error or inadvertent mistake."

[8]    Code of Civil Procedure section 340, subdivision (a) provides that a one-year statute of limitation applies to "[a]n action upon a statute for a penalty."

8

limitations to wages and damages, concluding the amended citation number WA 469620 applied to violations from May 1, 2015, through March 31, 2018.[9]

The hearing officer addressed California Lodge's claim the statutory tolling under section 90.6 "is inapplicable to the instant case due to insufficient service of process of notice of statutory tolling [and] that Government Code [section] 11500 et. seq. and California Code of Civil Procedure [section] 1013 require some sort of proof that the mail has been delivered or acknowledgement of some type of proof that the party being served, was served." The hearing officer pointed out California Lodge submitted declarations from its accounting administrative assistant and its agent for service of process, who stated they did not receive DLSE's notification of commencement of service.

The hearing officer ruled that DLSE's notice of investigation contained the information required by section 90.6, and DLSE sent it by first class mail. He also ruled that under Evidence Code section 641, the letter was presumed to have been received in the ordinary course of mail. Finally, he ruled it was immaterial whether California Lodge actually received the notification correspondence because "[section] 90.6 does not contain any requirement that notice be served in a particular manner. Additionally, there is no requirement that the employer receive the notice in order for tolling of the statute of limitations to be effective. There is no consequence to [California Lodge] whether the notice was received or not. Therefore, the statutory tolling pursuant to . . . [section] 90.6 is valid."

---

9     Code of Civil Procedure section 338, subdivision (a) provides that a three-year statute of limitation applies to "[a]n action upon a liability created by statute, other than a penalty."

9

*Minimum Wages*

In addressing minimum wages and overtime premium wages, the hearing officer's audit favored California Lodge: "DLSE incorrectly assessed minimum wages due for employees earning minimum wage and failed to credit [California Lodge] for paying all minimum wage due pursuant to the local ordinance. [¶] [M]inimum wage assessments and associated penalties based solely on the San Diego minimum wage increase are dismissed and are reflected in the audit summary."

However, as to the other minimum wage requirements not based on San Diego minimum wage increase, the hearing officer concluded: "Multiple instances of [California Lodge's] failure to pay minimum wage and overtime wages when required are found in the payroll journals and the timecards. Therefore, the findings of the audit based on the time records and payroll records provided by [California Lodge] support the imposition of civil penalties for failure to compensate all employees for minimum wage and overtime premium wages, as required by law."

*The Hearing Officer's Independent Audit and Ruling*

After the close of evidence, the hearing officer reviewed DLSE's amended audit, and "discovered additional issues and directed an independent audit[, which he] relied upon to support the assessment of wages, damages and penalties." The hearing officer reduced the overall amounts awarded against California Lodge to $195,844.35 as follows: for citation number WA 469620, $98,844.35 in assessment for unpaid minimum wages, overtime premium wages, waiting time penalties, and liquidated damages; $15,800 in penalty assessment (§ 1197.1); $2,300 in penalty assessment (§ 558, subd. (a)); and $36,150 in penalty assessment regarding

10

itemized wage statement (§ 226, subd. (e)(1)). For citation number PA 469621, he imposed $42,750 in penalty assessment regarding itemized wage statement (§ 226.3). He attached a copy of his audit summary to his findings and conclusions.

*Writ Proceedings*

California Lodge contended in its amended writ petition that in calculating and assessing wages and penalties, DLSE and the hearing officer violated its due process rights in several ways. DLSE failed to provide it discovery regarding its calculation methodology or an opportunity to effectively cross-examine or probe that methodology; DLSE failed to provide it with Deputy Labor Commissioner Damian's notes regarding her investigation; Damian failed to discuss with her superiors, or apply, the relevant case law regarding penalties and wages. California Lodge further contended DLSE did not exercise its discretion in imposing the penalties; DLSE relied on underground regulations that were unavailable to California Lodge; DLSE's investigative process is set up to "unleash untrained, inadequately supervised employees on the public without adequate safeguards . . . resulting in the denial of due process"; and insufficient evidence supported the hearing officer's findings, which also were inconsistent with the applicable case law. (Some formatting omitted.)[10]

The court denied the petition. It upheld the hearing officer's ruling regarding piece-rate wages, concluding he complied with the California Supreme Court's decision in *Oman v. Delta Airlines, Inc.* (2020) 9 Cal.5th

_____

[10] At one point during the proceedings below, the governing law was this court's opinion in *Certified Tire & Service Centers Wage and Hour Cases* (2018) 28 Cal.App.5th 1. However, after the California Supreme Court vacated that opinion, we decided *Certified Tire & Service Centers Wage and Hour Cases* (2021) 66 Cal.App.5th 190, which was subsequently depublished and no longer citable.

11

762, 781. The court ruled: "[California Lodge] challenges the finding that it paid piece-rate wages and engaged in unlawful wage borrowing. [It], however, has not directed the court to any exhibit in the administrative record establishing that it agreed to pay its employees by a standard *other* than piece-rate. In fact, the court's review of the record reveals no employment agreement, employee handbook, or other source of contractually promised compensation. . . . As such, [California Lodge] has failed to meet its burden of demonstrating that the administrative record does not contain substantial evidence to support the hearing officer's finding that [California Lodge] paid piece-rate wages. [Citation.] [¶] Moreover, the court finds that the administrative record discloses a proper evidentiary basis to support the hearing officer's conclusion that [California Lodge] paid its housekeeping employees per type of room cleaned, but failed to compensate them for nonproductive time spent filling their carts."

The court ruled there was no due process violation. It pointed out that to correct DLSE's minimum wage assessments, the hearing officer properly ordered a post-hearing audit that "actually *reduced* [California Lodge's] overall liability." It also concluded sufficient evidence supported the hearing officer's decision regarding tolling of the statute of limitations and other matters, as his ruling relied on detailed recitations of witness testimony and several exhibits.

DISCUSSION

I. *California Lodge's Challenge to Penalties and Assessments*

California Lodge contends the hearing officer found it paid its employees no less than the minimum wage for all hours worked, and there were no unpaid wages; therefore all of the penalties assessed against it must be reversed. It reaches that conclusion by mischaracterizing this statement

12

in the hearing officer's ruling: "When a housekeeper did not clean enough rooms to earn a piece-rate wage above minimum wage for all hours worked, [California Lodge] paid minimum wage to the housekeeper. However, the fact that sometimes a housekeeper received minimum wage, fails to prove it was not a piece rate system. This only supports the finding that if an employee could not produce enough production through piece-rate earnings, [California Lodge] paid those hours at minimum wage, to meet the minimum wage obligation as required by law. However, days where the employee produced enough through piece-rate earnings to exceed minimum wage, the housekeeper received piece-rate wages."

A. *Standard of Review*

A superior court's review of an agency's adjudicatory administrative decision under Code of Civil Procedure section 1094.5 is subject to two possible standards depending on the nature of the rights involved. (*Mann v. Department of Motor Vehicles* (1999) 76 Cal.App.4th 312, 320.) If the administrative decision involved or substantially affected a "fundamental vested right," the superior court exercises its independent judgment upon the evidence disclosed in a limited trial de novo in which the court must examine the administrative record for errors of law and exercise its independent judgment upon the evidence. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143–144 (*Bixby*); Code Civ. Proc., § 1094.5, subd. (c).) The theory behind this kind of review is that abrogation of a fundamental vested right "is too important to the individual to relegate it to exclusive administrative extinction." (*Bixby, supra,* at p. 144.) Where no fundamental vested right is involved, the superior court's review is limited to examining the administrative record to determine whether the adjudicatory decision and its findings are supported by substantial evidence in light of the whole record. (*Bixby, supra,* 4 Cal.3d

13

at pp. 143–144.) Substantial evidence must be " 'of ponderable legal significance,' " which is reasonable in nature, credible and of solid value. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

"Regardless of the nature of the right involved or the standard of judicial review applied in the trial court, an appellate court reviewing the superior court's administrative mandamus decision always applies a substantial evidence standard. [Citations.] But depending on whether the trial court exercised independent judgment or applied the substantial evidence test, the appellate court will review the record to determine whether either the trial court's judgment or the agency's findings, respectively, are supported by substantial evidence. [Citation.] If a fundamental vested right was involved and the trial court therefore exercised independent judgment, it is the trial court's judgment that is the subject of appellate court review. [Citations.] On the other hand, if the superior court properly applied substantial evidence review because no fundamental vested right was involved, then the appellate court's function is identical to that of the trial court. It reviews the administrative record to determine whether the agency's findings were supported by substantial evidence, resolving all conflicts in the evidence and drawing all inferences in support of them. [Citations.] [¶] If the administrative findings are supported by substantial evidence, the next question is one of law—whether those findings support the agency's legal conclusions or its ultimate determination. [Citation.] If the administrative record reveals the theory upon which the agency has arrived at its ultimate decision, the decision should be upheld so long as the agency found those facts that as a matter of law are essential to sustain the decision." (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1056–1059.)

14

B. *Applicable Law*

Employers in California may compensate non-exempt employees in a variety of ways—by, inter alia, the time worked, tasks completed, pieces produced, or sales made. (§ 200.) However, employers are required to pay at least minimum wage for all hours worked. (§ 1197.) For employers paying by piece-rate, this includes separately paying minimum wage for nonproductive time. (§ 226.2, subd. (a)(1).)

In *Armenta, supra,* 135 Cal.App.4th 314, the court held that employers cannot comply with minimum wage obligations by averaging wages across multiple pay periods; instead, "[t]he minimum wage standard applies to each hour worked by [employees] for which they were not paid." (*Id.* at p. 324.) The court addressed a compensation plan that paid employees only for "productive" time, and not for "nonproductive" time such as time spent traveling between job sites. It explained that under California wage orders requiring employers to compensate employees "for all hours worked," employers must pay employees for "all hours," including nonproductive time, "at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation." (*Id.* at p. 323, italics omitted.) Thus, under California law, the minimum or contracted wage requirement "applies to each hour worked by [employees] for which they [are] not paid." (*Id.* at p. 324.)

In *Bluford v. Safeway Inc.* (2013) 216 Cal.App.4th 864, the court relied on *Armenta, supra,* 135 Cal.App.4th 314. *Bluford* involved truck drivers who sued their employer for, among other things, failing to provide paid rest periods. (*Bluford, supra,* 216 Cal.App.4th at p. 868.) The employer paid the drivers "based on mileage rates applied according to the number of miles driven, the time when the trips were made, and the locations where the trips

15

began and ended." (*Id.* at p. 872.) The employer asserted it intended to pay drivers for their rest periods and its compensation system purportedly subsumed those payments into the mileage rates the employer negotiated in the drivers' collective bargaining agreement. (*Id.* at p. 871.) However, none of the bases on which the employer paid its drivers directly compensated them for rest periods. (*Id.* at p. 872.) The court found the employer's compensation system violated California law because the wage order applicable in that case prohibited employers from "deduct[ing] wages for rest periods." (*Id.* at p. 871.) The court explained "[t]he wage order's requirement not to deduct wages for rest periods presumes the drivers are paid for their rest periods." (*Ibid.*) In the context of a piece-rate compensation plan like the one used by the employer, this requirement means that employers must separately compensate employees for rest periods. (*Id.* at p. 872.)

In *Vaquero v. Stoneledge Furniture LLC* (2017) 9 Cal.App.5th 98, the court concluded, "Piece-rate compensation plans do not directly account for rest periods during which, like the nonproductive hours in *Armenta,* employees cannot earn wages." (*Id.* at p. 110.) The *Vaquero* court agreed with *Bluford* that employers are required "to separately compensate employees for rest periods if an employer's compensation plan does not already include a minimum hourly wage for such time." (*Ibid.*)

In *Oman, supra,* 9 Cal.5th at page 762, the California Supreme Court cited the above line of cases, and stated, "[W]e agree with this consensus: State law prohibits borrowing compensation contractually owed for one set of hours or tasks to rectify compensation below the minimum wage for a second set of hours or tasks, regardless of whether the average of paid and unpaid (or underpaid) time exceeds the minimum wage. Even if that practice nominally might be thought to satisfy the requirement to pay at least

16

minimum wage for each hour worked, it does so only at the expense of reneging on the employer's contractual commitments, in violation of the contract provisions of the Labor Code." (*Id.* at p. 781.)

The *Oman* court described as "wage borrowing" the forbidden practice described in *Armenta* of employers "taking compensation contractually due for one set of hours and spreading it over other, otherwise un- or undercompensated, hours to satisfy the minimum wage." (*Oman, supra*, 9 Cal.5th at p. 779.) It explained how courts assess a compensation plan for compliance with the minimum wage laws: "Whatever the task or period promised as a basis for compensation, however, an employer must pay no less than the minimum wage for all hours worked. [Citations.] The employer must satisfy this obligation while still keeping any promises it has made to provide particular amounts of compensation for particular tasks or periods of work. [Citations.] For all hours worked, employees are entitled to the greater of the (1) amount guaranteed by contract for the specified task or period, or (2) the amount guaranteed by the minimum wage. Whether a particular compensation scheme complies with these [Labor Code] obligations may be thought of as involving two separate inquiries. First, for each task or period covered by the contract, is the employee paid at or above the minimum wage? Second, are there other tasks or periods not covered by the contract,

17

but within the definition of hours worked, for which at least the minimum wage should have been paid?" (*Oman, supra,* 9 Cal.5th at p. 782.)[11]

*Analysis*

California Lodge erroneously claims the hearing officer made "the unchallenged finding that its housekeepers were paid at least minimum wage for every hour worked." It further claims that under *Oman*, it complied "with the law and any penalties assessed against it for alleged wage violations should be reversed." The question we decide is whether substantial evidence supports the hearing officer's determination that California Lodge failed to separately compensate the housekeepers for nonproductive time when they were paid piece-rate.

. In the first step of the *Oman* analysis, we inquire whether, for each task in the employer's contractual commitment to its employees, the "employees are paid at least the minimum wage." (*Oman, supra,* 9 Cal.5th at p. 782.) Here, substantial evidence, in the form of itemized wage statements, supports the hearing officer's conclusion that California Lodge's payment plan was not clearly reflected in the paystubs. Moreover, the wage statements support the hearing officer's finding California Lodge "paid each housekeeper an amount based on the total rooms cleaned at an applicable rate per type of room cleaned."

---

[11] The *Oman* court also stated: "In *Gonzalez* [(2013) 215 Cal.App.4th 36], the court understood the contract at issue to promise pay at a certain rate for certain tasks completed. The minimum wage floor, which 'supplement[ed]' employee pay only when 'necessary,' did not alter the nature of that promise." (*Oman, supra,* 9 Cal.5th at p. 788.) The *Oman* court pointed out the legislature, in section 226.2, subsequently "endorsed *Gonzalez's* overarching principles and codified for piece rate workers a statutory right to separate pay, at no less the minimum wage, for otherwise uncompensated nonproductive time and rest time." (*Oman, supra,* 9 Cal.5th at p. 788, fn. 8.)

Contrary to California Lodge's characterization the hearing officer concluded California Lodge did not comply with the minimum wage laws on days when the employee produced enough through piece-rate earnings to exceed minimum wage, the housekeeper received piece rate wages."

. The second step of the *Oman* analysis requires us to ascertain whether there are other tasks not covered by the contract within the definition of hours worked, "for which at least the minimum wage should have been paid[.]" (*Oman, supra,* 9 Cal.5th at p. 782.) The hearing officer answered that question in the affirmative, and concluded: "The evidence supports a finding that ten minutes of non-productive time for housekeepers filling carts was a conservative estimate and not incidental to the production of cleaning the rooms." And as to that non-productive time, the hearing officer found that "[o]n days where housekeepers earned piece-rate wages, [California Lodge] failed to compensate housekeepers for the time spent filling carts or making trips to the housekeeper room or laundry."[12]

We conclude that California Lodge misinterprets the hearing officer's ruling by only focusing on the portion of it favorable to its position under *Oman's* first step. Under *Oman's* second step, California Lodge's compensation scheme for housekeepers involves impermissible wage borrowing; that is, it amounts to "taking compensation contractually due for one set of hours and spreading it over other, otherwise un- or undercompensated, hours to satisfy the minimum wage." (*Oman, supra*, 9 Cal.5th at p. 779.) Sufficient evidence showed California Lodge did not comply with section 226.2's requirement that it compensate the housekeepers

_____

[12] The hearing officer clarified that California Lodge "is not assessed any minimum wage violations for non-productive time, or rest periods, for days where housekeepers were paid an hourly rate."

for nonproductive time spent filling the carts. In effect, the hearing officer correctly concluded that under *Oman*, "[California Lodge's compensation] practice nominally might be thought to satisfy the requirement to pay at least minimum wage for each hour worked, it does so only at the expense of reneging on the employer's contractual commitments, in violation of the contract protection provisions of the Labor Code." (*Oman*, *supra*, 9 Cal.5th at p. 781.) The hearing officer did not err in upholding DLSE's penalties imposed on California Lodge.

California Lodge minimizes its failure to properly compensate its housekeepers for nonproductive time, claiming that "evidence regarding supposedly non-productive time was inapposite and ultimately irrelevant to this case. That is so because there was overwhelming evidence that California Lodge always had a clear, consistent, and legal payment policy—clearly communicated to its employees and consistently abided in practice—to always pay housekeepers at least minimum wage for all hours worked, including the time housekeepers spent filling their carts." It supports that claim by referring to testimony from both a housekeeper and its office manager. Contrary to California Lodge's claim, as shown, under *Oman's* second step, its failure to compensate non-productive time was critical to a finding it violated the labor laws. California Lodge fails to acknowledge or dispute this factual finding and, under substantial evidence review, it is an implied concession.

Moreover, as the court ruled, "the hearing officer was entitled to disbelieve" the testimony from California Lodge's employees, and instead "credit Ms. Damian's testimony." We need not expand on the matter because, "where, as here, our review is limited to examining the whole administrative record to determine if the [Labor Commissioner's] findings and order are

20

supported by substantial evidence, it is not our function to reweigh the evidence or the particular factors cited by the [Labor Commissioner] in support of [the] decision . . . . Once we conclude, as we have here, that the [Labor Commissioner's] findings are indeed supported by substantial evidence, and that those findings in turn support the . . . legal conclusion or ultimate determination, our analysis is at an end." (*JKH Enterprises, Inc. v. Department of Industrial Relations, supra*, 142 Cal.App.4th at p. 1066.)

## II. *DLSE's Notice of Tolling*

California Lodge contends, "DLSE was obliged to serve its notice of [commencement of] investigation either personally or by certified mail. It did not do so, and the May 1, [2018] letter is therefore ineffective to toll the statute of limitations." (Some capitalization omitted.) It points out its two employees attested it never received DLSE's notification letter. Therefore, it contends the statute of limitations for all civil penalties assessed is only one year under Code of Civil Procedure section 340, and "the operative date for calculation of the statute of limitations was not May 1, 2018, but October 24, 2018, when the DLSE first served California Lodge with its [w]age [c]itation."

California Lodge supports its contention that DLSE should have served the notice of requirement personally or by certified mail by relying on various statutes setting out such a requirement in other contexts (Code of Civ. Proc., § 1013, subd. (a); Ed. Code, §§ 44936, 44941, 44949, 44955; Bus. & Prof. Code, § 7099.9) It also cites case law for the proposition that where a statute does not prescribe the method of notice, the presumption is that personal service applies. (*Hoschler v. Sacramento City Unified School District* (2007) 149 Cal.App.4th 248, 266.)

DLSE responds that sufficient evidence showed DLSE mailed the notification pursuant to section 90.6; and that statute, unlike the statutes

21

California Lodge relies on, contains no provision mandating actual notice or a prescribed manner of service, as no fundamental vested right is at issue here. DLSE adds, "As opposed to the service of a citation—there is no action for the employer to take for the statutory tolling period to take effect. Because no service of process is required by . . . section 90.6, neither is actual notice." It concludes, "The notice of tolling involves no adjudicatory action, no perceived deprivation that means due process is not required and neither is "service of process."

We need not decide whether section 90.6 requires actual notice because even assuming arguendo that it does, California Lodge has not shown how it was prejudiced by the fact it did not learn about the May 1, 2018 notice of commencement of the investigation and start of the statutory tolling period until October 2018, which was approximately five months into the statute's one-year tolling period. As stated, the hearing officer specifically ruled DLSE's citations related to violations that occurred in the previous three-year period between May 1, 2015, through March 31, 2018, and for civil penalties for violations occurring in the one-year between May 2, 2017 and March 28, 2018. The tolling period here did not have any bearing on the penalties imposed on California Lodge.

### III. *DLSE's Exercise of Discretion*

California Lodge contends DLSE failed to comply with various Labor Code provisions requiring it to exercise discretion when considering whether to charge different violations. It contends that "notwithstanding [its] best efforts to comply with the law and its cooperation with this investigation, DLSE simply failed to *exercise* the discretion with which it was charged. [¶] That was, itself, an abuse of discretion. The judgment should be reversed in that respect and the case remanded to the Superior Court for reference back

22

to the DLSE to reexamine the evidence and reassess damages in accordance with the relatively minor nature of any actual infractions."

California Lodge specifically cites to section 226.3 regarding the payment of wages, which states the Labor Commissioner "in his or her discretion, may decide not to penalize an employer for a first violation when that violation was due to a clerical error or inadvertent mistake." It also cites to section 1194.2, which permits the Labor Commissioner to, "as a matter of discretion, refuse to award liquidated damages" "if the employer demonstrates . . . that the act or omission giving rise to the action was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of any" Labor Code provision relating to minimum wage  or order of the commission.

California Lodge relies on testimony from deputy commissioner Damian and the DLSE auditor, who stated they did not exercise discretion in determining the violations to charge or penalties to assess. It also relies on Garza's testimony about his experience with DLSE's practice of routinely exercising its discretion in that regard.

Although California Lodge frames this contention as DLSE's failure to exercise its discretion, on appeal, we review for substantial evidence the hearing officer's findings and conclusions regarding California Lodge's failure to demonstrate its conduct warranted an exercise of discretion in its favor. The hearing officer made his own evaluation of the record and concluded that as to each violation, California Lodge had failed to show it acted out of clerical error, inadvertence, or in good faith.

As a general matter, to the extent California Lodge claims it "was *trying* to comply with the law," and made its "best faith efforts to comply with the law," another court rejected a similar line of argument in the context of a

challenge to penalties under section 226.3: "The statute does not require the Labor Commissioner or the court to 'attempt to divine the employer's subjective belief about the law.'" (*Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement* (2011) 192 Cal.App.4th 75, 87.) "[T]he very meaning of the word 'inadvertent' undercuts appellant's argument. Since the word denotes the *absence* of deliberation or intent, logically, no particular mental state is required. That conclusion is bolstered by the statute's companion phrase 'clerical error.' [Citation.] Like inadvertence, clerical error denotes behavior that is accidental, not deliberate." (*Id.* at p. 84.) "'The word "wilful" is used in different statutes with various shades of meaning.' [Citations.] In some Labor Code contexts, willfulness simply denotes an employer's failure to perform a required act. [Citations.] Even in penal statutes, willfulness generally requires 'only that the illegal act or omission occur "intentionally," without regard to motive or ignorance of the act's prohibited character.'" (*Ibid.*)

Section 226.3 provides for civil penalties for violations of section 226 regarding compensation for rest periods. It states that DLSE may exercise its discretion and not penalize an employer when a first violation is due to "clerical error or inadvertent mistake." In the proceedings, California Lodge argued it did not owe housekeepers wages for certain nonproductive periods because it paid them a base rate plus incentive, and not by piece rate. The hearing officer specifically concluded the housekeepers' paystubs did not support that conclusion, "thus precluding a finding of good faith dispute." On this record, California Lodge has not shown that it failed to pay those wages because of clerical error or inadvertence. To the contrary, it postulated its actions were justified under its incentive plan, for which no evidence was

24

presented. We therefore agree with the hearing officer's conclusion that California Lodge has not shown it acted in good faith.

The hearing officer concluded liquidated damages are mandatory under section 1194.2, subdivision (a) unless the employer demonstrates it acted in good faith. He concluded the exception was not met here, as California Lodge violated established law set forth in *Armenta*. He specifically found that "[California Lodge] failed to establish that housekeepers earned minimum wage for every hour worked. [It] failed to establish an affirmative defense based in good faith and objective reasonableness." We conclude the hearing officer's ruling on this point is supported by substantial evidence.

Similarly, in discussing waiting time penalties under section 203, the hearing officer pointed out that under the applicable regulations, a willful failure to pay wages occurs when an employer intentionally fails to pay wages to an employee when they are due, but that a good faith dispute that any wages are due will preclude imposition of waiting time penalties. He specifically found California Lodge's "argument that housekeepers are not owed wages because they were paid a base rate plus incentive, not piece rate, is unsupported by the evidence. The paystubs do not provide the hours worked by the housekeepers to support the assertion that housekeepers earned a base rate for all hours worked. . . . [California Lodge's] argument is not supported by the evidence presented at the hearing, and thus precludes a finding of a 'good faith dispute.' " Again, the evidence the hearing officer adduced for his conclusion support a finding no basis existed for DLSE to exercise discretion to not charge or assess penalties for waiting time penalties.

The hearing officer concluded regarding another of California Lodge's statutory violations: "There is no evidence that the failure to issue accurate

25

itemized wage statements was inadvertent.  Additionally, [California Lodge] did not provide any argument that the failure to issue itemized wage statements in compliance with [section] 226 was inadvertent."  Again, California Lodge points to nothing in the record to dispute the hearing officer's finding.

VI.  *The Hearing Officer Ordered an Independent Audit*

California Lodge contends the hearing officer denied it due process by assessing "final penalties based on unknown input from an independent auditor whose opinions, methodology, and calculations were never explained, and were not shared with the parties or subject to rigorous cross-examination."  It claims the hearing officer "did not explain what the 'additional issues' he discovered were, how he discerned them, what exactly he instructed [the independent auditor] to do to address them, or what evidence [the auditor] relied upon in creating the independent audit.  That was a blatant denial of due process that, by itself, warrants a reversal of the judgment."

Here, as in another case this court decided, "the parties do not on appeal identify the genesis of the awards under sections [of the different Labor Code provisions and] we surmise the [hearing officer] entered those amounts as a matter of law based on the factual determinations by the [independent auditor] quantifying the number of meal and rest period violations, the number of minimum wage violations, and the number of inaccurate itemized wage statements provided by [California Lodge to DLSE]."  (*Brewer v. Premier Golf Properties, LP* (2008) 168 Cal.App.4th 1243, 1251, fn. 6.)

To obtain a reversal of the judgment, California Lodge on appeal must demonstrate how it was prejudiced by the ruling below.  It has not done so.

26

In fact, the hearing officer's independent audit reduced California Lodge's total penalties and assessments. Further, the hearing officer attached its amended audit to its ruling; therefore, if California Lodge takes issue with any specific item in it, the onus is on it to show us how the hearing officer erred. "We are not obligated to make arguments for [parties] and may and do disregard conclusory arguments failing to disclose the reasoning by which [the parties] reached the conclusions they ask us to adopt." (*KCSFV I, LLC v. Florin County Water Dist.* (2021) 64 Cal.App.5th 1015, 1031.)

DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


KELETY, J.

27